1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10

11   MARK BIRKET,                          ) NO. SACV 04-00789-MAN
                                           )
12                   Plaintiff,            )
           v.                              ) MEMORANDUM OPINION AND ORDER
13                                         )
                                           )
14   JO ANNE B. BARNHART,                  )
     Commissioner of the                   )
15   Social Security Administration,       )
                                           )
16                   Defendant.            )
     _____)

17

18

19        Plaintiff filed a Complaint on July 16, 2004, seeking review of the

20   denial  by  the  Social  Security  Commissioner  ("Commissioner")  of

21   Plaintiff's claim for disability insurance benefits ("DIB").  42 U.S.C.

22   § 405(g).  On August 23, 2004, the parties filed a "Consent to Proceed

23   Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636.

24   The parties filed a Joint Stipulation on April 22, 2005, in which:

25   Plaintiff seeks an order reversing the Commissioner's decision denying

26   benefits and directing the payment of benefits or, alternatively,

27   remanding the case for a new hearing; and Defendant requests that the

28   Commissioner's decision be affirmed and this action dismissed with

prejudice.   The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for DIB on January 11, 2002. (Administrative Record ("A.R.") 46-51.)  Plaintiff claims to have been disabled since April 10, 2001, due to right knee problems, arthritis, bi-polar disorder, and history of coronary bypass surgery.  (A.R. 14, 46.)  Plaintiff has past relevant work experience as a job coach and custodian.  (A.R. 13.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration.  On April 17, 2003, at a hearing before Administrative Law Judge Steven Chaffin ("ALJ"), Plaintiff, who was represented by counsel, appeared and testified.  (A.R. 269-80.)  In a May 29, 2003 decision, the ALJ found that Plaintiff was not disabled, and the Appeals Council subsequently denied Plaintiff's request for review of that decision.  (A.R. 13-19, 3-5.)

## SUMMARY OF ADMINISTRATIVE DECISION

In his May 29, 2003 decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (A.R. 18.)  He found that Plaintiff is an "individual closely approaching advanced age," pursuant to 20 C.F.R. § 404.1563, and has a "high school education," pursuant to 20 C.F.R. § 404.1564.  (A.R. 19.) He found that Plaintiff has "severe" impairments, consisting of knee

pain, hypertension, coronary artery disease, diabetes, and bi-polar disorder, but that he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (A.R. 14, 18.)

The ALJ further found that Plaintiff has the following residual functional capacity:

> [Plaintiff can] lift and carry up to 25 pounds frequently and
> 50 pounds occasionally, stand and/or walk for about 6 hours in
> an 8 hour workday with normal breaks, sit for about 6 hours in
> an 8 hour workday, with a restriction to occasional climbing,
> balancing, stooping, kneeling, crouching and crawling;
> regarding mental function, the bi-polar condition is
> responsive to medication with no more than slight impairment
> in any area of mental function.

(A.R. 19.)  The ALJ found that "[Plaintiff's] allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision."  (A.R. 18.)  The ALJ found that Plaintiff has no transferable skills pursuant to 20 C.F.R. § 404.1568.  (A.R. 19.)

The ALJ concluded that Plaintiff is able "to perform the full range of medium work" pursuant to 20 C.F.R. § 404.1567.[1]  (A.R. 19.) Notwithstanding the ALJ's residual functional capacity finding that

---

[1]    "Medium work" involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 416.967(c); 404.1567(c).

included non-exertional limitations of only occasionally climbing, balancing, stooping, kneeling, crouching, and crawling, the ALJ then found that, under Rule 203.22 of the Medical-Vocational Guidelines (the "Grids"), Plaintiff is not disabled.  Therefore, the ALJ concluded that Plaintiff is not entitled to DIB.  (*Id.*)

### STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Secretary of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and

4

1  free from legal error, even when the record reasonably supports more
2  than one rational interpretation of the evidence. *Id.* at 1041; *see also*
3  Morgan v. Commissioner of the Social Security Administration, 169 F.3d
4  595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th
5  Cir. 1995).

6

7                               **DISCUSSION**

8

9       Plaintiff alleges two disputed issues. First, he contends that the
10  ALJ should have elicited vocational expert testimony to determine what
11  work Plaintiff can perform in view of significant non-exertional
12  limitations arising from his bi-polar disorder and knee pain that were
13  not included in the ALJ's residual functional capacity finding. Second,
14  Plaintiff contends that the ALJ erred by failing to consider the Daily
15  Activities Questionnaire completed by Betty Birket, his mother. (Joint
16  Stip. at 3.)

17

18  **A.   Because This Court Cannot Determine Whether Plaintiff's Residual**
19       **Functional Capacity, Which Excluded Significant Non-Exertional**
20       **Limitations, Is Based On Substantial Evidence, Remand Is Necessary**
21       **To Reevaluate Plaintiff's Residual Functional Capacity And**
22       **Vocational Expert Testimony Likely Will Be Necessary**.

23

24       At the fifth, and last, step in the analysis of whether a claimant
25  is disabled, the ALJ must consider whether the claimant's impairment
26  "prevent[s] her from doing any other work." Holohan v. Massanari, 246
27  F.3d 1195, 1200 (9th Cir. 2001). The ALJ considers the claimant's
28  residual functional capacity, age, education, and past work experience

                                   5

to determine whether the claimant can do other work.  *Id.*  If, after considering these factors, the ALJ concludes that the claimant cannot perform other work, he is disabled.  20 C.F.R. §§ 404.1520(f); 20 C.F.R. § 416.920(f).  If the claimant can do other work, the Commissioner must show that there are a significant number of jobs in the national economy he can perform.  This must be established by either:  (1) the testimony of a vocational expert; or (2) reference to the Grids.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1099 (9th Cir. 1999).

In assessing a claimant's residual functional capacity, the ALJ must consider the limitations that impair a claimant's ability to work, which are divided into two categories:  exertional and non-exertional. Exertional limitations affect the claimant's ability to meet a job's strength demands and include limitations on the ability to sit, stand, walk, lift, carry, push or pull.  *See* 20 C.F.R. § 404.1569a (containing examples of exertional limitations).  Non-exertional limitations are those that do not affect the claimant's ability to meet a job's strength demands.  *See* 20 C.F.R. §§ 404.1569a(c); 416.969a(c)(examples of non-exertional limitations include nervousness, depression, difficulty concentrating, or difficulty understanding or remembering directions).

When a claimant suffers only from exertional limitations, but not non-exertional limitations, the ALJ may apply the Grids, at step five, to match the claimant with appropriate work.  <u>Holohan</u>, 246 F.3d at 1208; <u>Reddick v. Chater</u>, 157 F.3d 715, 729 (9th Cir. 1998); <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1340 (9th Cir. 1988).  However, an ALJ "may apply the grids in lieu of taking testimony of a vocational expert <u>only</u> when the grids accurately and completely describe the claimant's abilities and

limitations," and not in cases where the Grids do not accurately account for a claimant's limitations. <u>Reddick</u>, 157 F.3d at 729 (emphasis added); *see also* <u>Holohan</u>, 246 F.3d at 1208 (as the Grids "are based only on strength factors," they are sufficient to meet the Commissioner's burden at step five "only when a claimant suffers only from exertional limitations").

Here, the ALJ reasoned that Plaintiff was not disabled according to the Grids, as follows:

The Medical-Vocational Guidelines may be used to direct an unfavorable decision only if the claimant has the exertional residual functional capacity to perform substantially all (as defined in Social Security Ruling 83-11) of the seven primary strength demands required by work at the given level of exertion (as defined in Social Security Ruling 83-10) and there are no non[-]exertional limitations.  When all of the criteria of a Medical-Vocational Rule are met, the existence of occupations in the national economy is met by administrative notice.

To determine the physical exertion requirements of work in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy based upon the definitions in the Dictionary of Occupational Titles, which is published by the Department of Labor based upon the Guidelines in 20 CFR § 404.1567.

Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he can also do sedentary and light work.

Because the evidence supports a finding that [Plaintiff] can perform the demands of the full range of medium work, a finding of "not disabled" is directed by Medical-Vocational Rule 203.22.

(A.R. 18.)

Plaintiff contends that, in light of non-exertional limitations resulting from his "severe" impairments of bi-polar disorder and knee pain, it was error for the ALJ to fail to elicit testimony from a vocational expert.  Specifically, Plaintiff contends that his right knee pain makes standing for long periods "terribl[y] pain[ful]" and his bi-polar disorder renders him unable to concentrate for "a very long period of time," and that these non-exertional limitations necessitated the testimony of a vocational expert in order to determine what work, if any, Plaintiff can perform.  (Joint Stip. at 3, citing A.R. 275 and A.R. 277.)

Plaintiff's argument that the ALJ erred by failing to elicit testimony from a vocational expert in view of these non-exertional limitations arising from his mental and knee impairments is founded upon the implicit contention that the ALJ erred by excluding these further limitations from his residual functional capacity finding.    Put

differently, Plaintiff contends that his residual functional capacity should have included additional non-exertional limitations (*i.e.*, further limitations on standing, arising from his knee impairment, and on concentration, arising from his mental impairment), which the ALJ improperly disregarded in finding that Plaintiff could perform the full range of "medium" work.   Thus, whether the ALJ was required to seek testimony from a vocational expert depends upon whether the ALJ's finding -- that Plaintiff can perform the full range of "medium" work -- is correct.

"The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms."   Social Security Ruling 96-8p.   According to 20 C.F.R. § 404.1545(a) (emphasis added):

> We will assess your residual functional capacity *based on all of the relevant medical and other evidence. . . .* We will consider any statements about what you can still do that have been provided by medical sources . . . We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.

*See also* Social Security Ruling 85-15, 1985 WL 56857, *6 ("[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.").

9

1    The Court notes that the ALJ has rendered two conflicting findings
2    regarding Plaintiff's residual functional capacity.  In particular, the
3    ALJ's finding that Plaintiff can perform the "*full range* of medium work"
4    is at odds with his finding that Plaintiff has a "restriction to
5    occasional climbing, balancing, stooping, kneeling, crouching, and
6    crawling."  (A.R. 19; emphasis added)  However, Plaintiff does not
7    specifically contend that these non-exertional limitations necessitate
8    the testimony from a vocational expert.  Nevertheless, the ALJ should
9    resolve this conflict on remand of this case.  To the extent that
10   Plaintiff's residual functional capacity contains these non-exertional
11   limitations, or any other non-exertional limitations discussed below,
12   the ALJ must elicit testimony from a vocational expert.  *See* Holohan,
13   246 F.3d at 1208; Reddick, 157 F.3d at 729.

14

15   **1.    Mental Impairment:**

16

17   In determining the limitations arising from Plaintiff's mental
18   impairment, the ALJ relied upon the limitations found by Dr. Norma
19   Aguilar, a psychiatrist who examined Plaintiff at the request of the
20   Commissioner.  In discussing the evidence provided by Dr. Aguilar, the
21   ALJ stated:

22

23       [Plaintiff] underwent a complete psychiatric consultative
24       evaluation on March 1, 2002, with Dr. N. Aguilar, M.D.
25       (Exhibit  8F).   The  chief  subjective  complaint  was
26       "depression, sometimes manic."  In reporting his history to
27       the examiner, [Plaintiff] said he abused drugs from 1971 to
28       1980.   He  reported  onset  of  depression  in  1971,  with

10

hospitalization at Metro State Hospital.  [Plaintiff] said he was diagnosed with manic depressive illness in 1976 and was prescribed Lithium.  He said he was responding well to the medication, but was feeling some additional depression around 2000, at which time he was given a prescription for Zyprexa. [Plaintiff] also reported receiving counseling.

The examination with the consultative psychiatrist, Dr. Aguilar, revealed well preserved mental function and good response to treatment.  [Plaintiff] was described as cooperative with appropriate behavior, normal motor activity, normal and rational speech.  There was no evidence of disorganized thinking and [Plaintiff] denied mood swings. Regarding daily functioning, [Plaintiff] said he reads three hours a day, watches television 7 hours a day, cooks, shops, does laundry, maintains his residence, uses public transportation, is able to communicate effectively and interact appropriately with friends, family and neighbors. The consultative examiner diagnosed Bipolar Disorder, Mixed, with Psychotic Features.  Dr. Aguilar concluded that [Plaintiff] has the ability to follow and understand simple and complete to complex instructions, could interact appropriately with co-workers, supervisors and the public, with no more than mild difficulty maintaining persistence and pace in a normal workplace setting (Exhibit 8F).

(A.R. 15-16.)

11

A review of the March 1, 2002 report of Dr. Aguilar confirms that she performed a mental status examination and diagnosed Plaintiff with "Bipolar Disorder, Mixed, with psychotic features"; she also assessed Plaintiff with a Global Assessment of Functioning ("GAF") of 55 to 60.[2] (A.R. 178.)  Specifically, Dr. Aguilar's report states that Plaintiff "can interact with supervisors, co-workers and the public.  He can comply with job rules such as safety and attendance, and can respond to changes in the normal workplace setting.  He, however, will have mild difficulty maintaining persistence and pace in a normal workplace setting."  (A.R. 178.)

Defendant contends that the ALJ correctly found no concentration limitations, as Dr. Aguilar's report noted that Plaintiff's mental function was "well preserved" and "[responsive] to treatment," and Plaintiff reported reading three hours each day.  (Joint Stip. at 5-6.) In addition, Defendant contends that the ALJ's finding that Plaintiff has no mental limitations is supported by substantial evidence, because Dr. Aguilar's report is consistent with a March 15, 2002 Mental Residual Functional Capacity assessment completed by a state agency physician. (Joint Stip. at 6.)

In her March 1, 2002 report, Dr. Aguilar did not indicate that she reviewed any records from Plaintiff's treating physicians regarding Plaintiff's mental health treatment; instead, her report indicates that

---

[2]     A GAF of 51-60 shows "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  Diagnostic and Statistical Manual of Mental Disorders Text Revision, 34 (4th ed. 2000) ("DSM-IV-TR").

she relied only on the history of Plaintiff's mental illness provided by Plaintiff himself, who she found was "a fair historian." (A.R. 176.) Thus, it would appear that Dr. Aguilar was not provided with Plaintiff's prior mental health treatment history. *See* 20 C.F.R. §§ 404.1517, 416.917 ("[i]f we arrange for [a consultative] examination or test, . . . . [w]e will also give the examiner any necessary background information about your condition."). In addition, she found that Plaintiff would have some "mild" limitations in the workplace, *viz.*, "mild difficulty maintaining persistence and pace in a normal workplace setting" (A.R. 178.) The ALJ recognized, but simply disregarded, that limitation in finding that Plaintiff had "no more than slight impairment in any area of mental function." (A.R. 19.) *See also* <u>Lester</u>, 81 F.3d at 830-31 (citing <u>Andrews</u>, 53 F.3d at 1043)("the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.").

Most significantly, however, recent treating records note symptoms arising from Plaintiff's mental health impairment which suggest greater limitations than those found by Dr. Aguilar. For instance, many of Plaintiff's treating records at Kaiser Permanente following Plaintiff's April 10, 2001 onset date note abnormal and inappropriate behavior, difficulties with social functioning and concentration, and problems with his medication.[3] (A.R. 218 -- December 11, 2001 progress record

---

[3] While Plaintiff reported drug use in the past, the ALJ did not find that substance abuse was a contributing factor to his mental impairment, and none of his recent drug tests showed drug use. (*See* A.R. 138 -- January 26, 2001 negative drug test; 160 -- January 29, 1997 negative drug test.)

noting Plaintiff's report that he had been arguing a lot with his mother and that "Zyprexa is the only thing that holds me together with my mom like this"; A.R. 226 -- October 9, 2001 progress record noting "odd affect, loud, atonal voice"; A.R. 235-36 -- May 1, 2001 progress record noting "vomits now and then at night -- has thrown up on his Zyprexa," "'very anxious' recently," "affect blunted," and "a little odd at times (sudden brief bursts of inappropriate laughter)"; A.R. 238 -- April 3, 2001 progress record noting that Plaintiff had reported "I don't need to be [hospitalized] but I have to be seen right now," "I'm very manic," "[t]he medicine isn't working," and "I'm all manic"; A.R. 245 -- February 13, 2001 progress record noting "[s]tream disjointed," "difficult to follow," "difficult to lead," and "poor concentration"; A.R. 258 -- April 1, 2003 progress record noting "[b]izarre affect, grins/laughs inappropriately at times.") Six months after Dr. Aguilar's examination, Plaintiff was briefly hospitalized for a "gait imbalance," which Plaintiff's doctors described as possibly resulting from a chemical imbalance due to Plaintiff's psychotropic medications or his manic depression. (A.R. 185 -- October 6, 2002 Discharge Record noting that Plaintiff was admitted on October 3, 2002 for "disequilibrium" and was given Cogentin, which made him feel worse, and his Lithium medication was suspended; A.R. 188 -- October 3, 2002 Urgent Care record diagnosing Plaintiff with being "off-balance" and "light headed," and noting Plaintiff's psychotropic medications; A.R. 189-92 -- October 3, 2002 Admission record noting that Plaintiff reported "progressive difficulty with balance" and diagnosing "gait disturbance, rule out Cogentin side effect" and manic depression.)

Thus, while Defendant contends that, based on Plaintiff's statement

14

1   to Dr. Aguilar that he read for three hours at a time, the ALJ

2   appropriately excluded any limitations arising from Plaintiff's claimed

3   impaired concentration, Plaintiff's treating records indicate that his

4   ability to concentrate has not always remained constant. *See, e.g.,*

5   Lebus v. Harris, 526 F. Supp. 56, 61 (N.D. Cal. 1981)("Realistically,

6   a person with a mental impairment may be unable to engage in competitive

7   employment, as his ability to work may be sporadically interrupted by

8   unforeseeable mental setbacks."). In addition, Defendant's contention

9   that Dr. Aguilar's findings are "consistent" with the the March 15, 2002

10  state agency physician's assessment is not accurate. Although not

11  specifically discussed by the ALJ, this state agency physician found

12  that Plaintiff has certain "moderate" limitations and is restricted to

13  "simple work which does not involve the stress of extensive public

14  contact."[4]  (A.R. 110-12.)

15

16      Given the limitations found by Dr. Aguilar, as well as the treating

17  records demonstrating the possibility that Plaintiff has additional

18  limitations resulting from his mental impairment (including limitations

19  on his ability to concentrate), which Dr. Aguilar apparently did not

20  review, the ALJ's finding that Plaintiff has no mental limitations is

21  not based on substantial evidence. Thus, remand is necessary so that

22  ──────────────

23      [4]    Specifically, this physician, whose identity is unclear, found
    that Plaintiff:  is "not significantly limited" in two categories of
24  "understanding and memory," seven categories of "sustained concentration
    and persistence," four categories of "social interaction," and four
25  (all) categories of "adaptation"; and is "moderately" limited in one
    category of "understanding and memory," one category of "sustained
26  concentration and persistence," and one category of "social
    interaction."  (A.R. 110-11.)  In a corresponding Psychiatric Review
27  Technique form, this physician found that Plaintiff has "mild"
    limitations in maintaining social functioning and maintaining
28  concentration, persistence, or pace. (A.R. 107.)

15

the ALJ can reassess the impact of Plaintiff's mental health issues on his residual functional capacity.  That reassessment must be based on all of the relevant evidence, including Plaintiff's mental health history, and may require further development of the record by seeking an additional medical opinion.  *See, e.g.,* 20 C.F.R. §§ 404.1517, 404.1545(a), 404.1512(b)(6) (ALJ may rely upon medical consultants and medical expert based on their review of the evidence in determining whether a claimant is disabled); *see also* 20 C.F.R. § 404.1519a(b)(listing situations requiring a consultative examination, such as a conflict, inconsistency, ambiguity, or insufficiency in the evidence).  *See also* Ladue v. Chater, 1996 WL 83880, *5 (N.C. Cal. Feb. 16, 1996)(requiring remand where "[t]he ALJ failed to conform to 20 C.F.R. § 404.1517 requiring that the consultative examiner be provided with necessary background information regarding the claimant's condition [and] it appears from the record that the ALJ gave Dr. Mehta's consultative report considerable weight, even though Dr. Mehta was lacking important background information regarding plaintiff"); Hurstrom v. Barnhart, 233 F. Supp. 2d 1159, 1166 (S.D. Io. 2002)("There is no indication that either [consultative physicians] had access to any of the medical records which were available at the time of their examinations. . . . Even if Plaintiff told the consulting doctors that he had no limitations, these statements are not credible in light of the numerous laboratory reports showing that his blood sugar out of control.")(quotations omitted).

**2.   Knee Impairment:**

In reaching his finding as to Plaintiff's physical residual

functional capacity, the ALJ relied upon the report of Dr. John Sedgh, an internal medicine physician who examined Plaintiff at the request of the Commissioner.  The ALJ reasoned, as follows:

> The medical records reflect treatment for complaints of low back pain, neck pain, and right leg pain following a series of work-related falls (Exhibit 6F).  [Plaintiff] reportedly underwent arthroscopic surgery on his right knee in early 2001.  A progress note dated May 1, 2001, stated [Plaintiff] was doing well, spending a lot of time in the garden and doing housekeeping (Exhibit 9F.51). . . . .
>
> On February 27, 2001, [Plaintiff] underwent a consultative internal medicine examination, performed by Dr. J. Sedgh, M.D., of Millennium Multispecialty Medical Group (Exhibit 7F). . . .  He reported a history of right knee pain, with occasional swelling and a history of knee surgery in 1976 and arthroscopic knee surgery in 2001. . . .  Physical examination revealed some swelling of the right knee and crepitus in both knees, however, range of motion was full in the knees, bilaterally, and in all other areas tested. Motor, sensory, and reflex responses were normal.  Gait was slow and slightly antalgic, however, [Plaintiff] was observed to have a normal gait at the time of another consultative examination on March 1, 2002 (Exhibit 8F).  Dr. Sedgh diagnosed hypertension (blood pressure was 120/78 on the date of exmination), with no evidence of end organ damage; diabetes, with no evidence of end organ damage; and right

17

knee pain.  The examiner opined that [Plaintiff] retained the functional capacity for medium activity, including lifting and carrying up to 25 pounds frequently and 50 pounds occasionally, standing and/or walking for 6 hours in an 8 hour workday, and sitting for 6 hours in an 8 hour workday.

\*      \*      \*

The undersigned concurs with the assessment for medium exertion and no more than mild impairment in mental function. . . .  Some swelling and crepitus of the knee warrants restriction to medium activity, however, further restriction is simply not evident in the medical reports.  Range of motion is good.  Sensory motor and reflex responses are intact.

(A.R. 16-17.)

The report of Dr. Sedgh noted Plaintiff's complaints of right knee pain and occasional swelling since January 2001, which is "aggravated by *standing, walking, and sitting* and is relieved by taking medication." (A.R. 167; emphasis added.)  After physically examining Plaintiff, Dr. Sedgh found that "[t]here is some swelling of the right knee and crepitus in both knees" but "[r]anges of motion, consisting of flexion and extension, are within normal limits bilaterally."  (A.R. 170.) Specifically, Dr. Sedgh found that Plaintiff has the following physical residual functional capacity:  "[Plaintiff] can occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds.  He can

18

stand and/or walk, with normal breaks, for six hours, and he can sit, with normal breaks, for six hours in an eight-hour workday." (A.R. 172.) However, Dr. Sedgh's report does not indicate that he reviewed any objective testing of Plaintiff's knee or any treating records. In addition to Dr. Sedgh's report, the ALJ cited an April 4, 2002 Physical Residual Functional Capacity Assessment completed by a state agency physician, whose identity is unclear, which assesses Plaintiff with the ability to perform "medium" work. Although this assessment notes that there "[i]s a treating or examining source statement(s) regarding the claimant's physical capacities in file," it does not indicate which statements were reviewed or whether any objective testing was reviewed. (A.R. 16-17, 113-20.)

Significantly, the record contains objective testing, a February 27, 2002 x-ray of Plaintiff's right knee showing "degenerative arthritis" and "post-surgical change," and specifically noting that "[d]egenerative hypertrophic spurring is present at the proximal posterior patella and the anterior tibia" and the "retropatellar space is narrow." (A.R. 174.)

Defendant correctly contends that the opinion of an examining physician may constitute substantial evidence of a claimant's residual functional capacity where it rests on an independent examination of the claimant. (Joint Stip. at 5-6, citing Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(citing Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1984); Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984)). However, in view of the fact that it is not clear whether Dr. Sedgh or the state agency physician reviewed the medical evidence from

Plaintiff's treating physicians or any findings based on objective
testing, including this February 27, 2002 x-ray, it is unclear whether
their residual functional capacity assessments constitute substantial
evidence, especially with respect to any limitations flowing from
Plaintiff's claimed right knee impairment.[5]  Thus, remand is necessary
so that the ALJ can develop the record by seeking an additional, or
updated, medical opinion to determine Plaintiff's physical residual
functional capacity that is based on all of the relevant evidence.[6]  *See*
20 C.F.R. §§ 404.1517, 404.1545(a), 404.1512(b)(6), 404.1519a(b); Ladue,
1996 WL 83880, *5; Hurstrom, 233 F. Supp. 2d at 1166.

> **3.    Defendant's Argument, That Reliance On The Grids Is Proper,**
> **Even Assuming Plaintiff Has Non-exertional Limitations, Is**
> **Unavailing.**

Defendant contends that:  Even if Plaintiff has non-exertional
limitations, "the Regulations do not automatically preclude use of the

---

[5]    Defendant's reliance on Tonapetyan is misplaced, as the court
found that the ALJ in that case appropriately relied upon the opinion of
an examining physician, who grounded his opinion as to the claimant's
physical impairments on objective findings.  242 F.3d at 1149.  *See also*
Miller, 770 F.2d at 948 (ALJ properly adopted the opinion of an
examining physician whose findings rested on independent clinical
findings)(quoting Allen, 749 F.2d at 579 ("[T]o the extent that [the
nontreating physician's] opinion rests on objective clinical tests, it
must be viewed as substantial evidence that [the claimant] is no longer
disabled.")).

[6]    The Court notes that the ALJ found that Plaintiff weighed 370
pounds and had been diagnosed as obese, but did not otherwise discuss
Plaintiff's obesity.  (A.R. at 16.)  On remand, the ALJ should consider
whether Plaintiff's obesity impacts his knee impairment or any of his
other impairments.  *See* Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005);
Celaya v. Halter, 332 F.3d 1177 (9th Cir. 2003).

1    [Grids]."[7]  (Joint Stip. at 4, citing <u>Desrosiers</u>, 846 F.2d at 577.)  In

2    addition, even if Plaintiff could not perform the full range of "medium"

3    work, Rule 202.14 (profiling a claimant who is limited to "light" work,

4    "closely approaching advanced age," with a "high school education," and

5    "no transferable skills") directs a finding that Plaintiff is "not

6    disabled."[8]  Any error in finding that Plaintiff could perform "medium"

7    work was therefore harmless.  (Joint Stip. at 7.)

8

9       However, although Defendant maintains (relying on <u>Desrosiers</u>) that

10   non-exertional impairments that do not significantly limit the range of

11   work the claimant can perform will not preclude reliance on the Grids,

12   it is not clear whether the possible additional non-exertional

13   limitations discussed above can be so characterized.  As the Ninth

14   Circuit explained in <u>Desrosiers</u>, "[a] non-exertional impairment, *if*

15   *sufficiently severe*, may limit the claimant's functional capacity in

16   ways not contemplated by the guidelines," and therefore, "[i]n such a

17   case, the guidelines would be inapplicable."  846 F.2d at 576 (emphasis

18   added).  Furthermore, given the possibility that Plaintiff has

19   additional, significant non-exertional limitations, it is not clear that

20   even if Plaintiff were limited to "light" work, he could perform the

21   "full range" of such work and would fit the profile for a claimant under

22

23       [7]    In <u>Desrosiers</u>, the Ninth Circuit stated that the existence of
24   a minor non-exertional impairment will not preclude the use of the
     Grids.  Accordingly, in order to decide whether the Grids may be applied
25   or whether the testimony of a vocational expert is needed, the ALJ must
     first determine whether the non-exertional impairment found to exist
26   significantly limits the claimant's ability to do a full range of work
     at the appropriate exertional level.  846 F.2d at 577.

27       [8]    "Light work" involves "lifting no more than 20 pounds at a
28   time with frequent lifting or carrying of objects weighing up to 10
     pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).

Rule 202.14, as Defendant contends.

Accordingly, the ALJ's residual functional capacity finding is not based on substantial evidence and constitutes error.  On remand, the ALJ must develop the record regarding Plaintiff's residual functional capacity as directed above and, if necessary, obtain vocational expert testimony in determining what work, if any, Plaintiff can perform.

**B.    On Remand, The ALJ Should Consider Statements Made By Betty Birket, Plaintiff's Mother, In A Third Party Witness Questionnaire.**

Plaintiff contends that the ALJ erred by failing to consider the statements made by Ms. Birket, his mother, in a January 29, 2002 Third Party Witness Questionnaire.  Specifically, Plaintiff contends that the ALJ improperly disregarded Ms. Birket's statements that Plaintiff: "sleeps a lot," "appears to be very depressed," and "doesn't care how he looks."  (Joint Stip. at 7.)  In addition, Plaintiff contends that Mr. Birket's statements constitute "written testimony," and thus, remand is required to allow the ALJ to properly consider such testimony.

As this case is being remanded so that the ALJ can reconsider Plaintiff's residual functional capacity and possibly elicit vocational expert testimony, and Ms. Birket's written statements are relatively brief (*see* A.R. 80-85), the Court further directs the ALJ to consider the statements made by Ms. Birket in her January 29, 2002 Daily Activities Questionnaire on remand of this case.

1    C.    **Remand Is Necessary**.

2

3         In view of the ALJ's need to further develop the record, this

4    action must be remanded.  *See* <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603

5    (9th Cir. 1989)(remand appropriate to remedy defects in the record).

6

7                                  **CONCLUSION**

8

9         Accordingly, for the reasons stated above, the denial of benefits

10   is REVERSED, and this case is REMANDED for further proceedings

11   consistent with this Memorandum Opinion and Order.   Judgment shall be

12   entered reversing the decision of the Commissioner, and remanding the

13   matter for further administrative action consistent with this Memorandum

14   Opinion and Order.

15

16        IT IS FURTHER ORDERED that the Clerk of the Court shall serve

17   copies of this Memorandum Opinion and Order and the Judgment on counsel

18   for Plaintiff and for Defendant.

19

20        **LET JUDGMENT BE ENTERED ACCORDINGLY.**

21

22   DATED: March 30, 2006

23                              _____/s/_____

24                                  MARGARET A. NAGLE
                              UNITED STATES MAGISTRATE JUDGE

25

26

27

28

                                      23